UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
_____
                               )
E-STEPS, LLC,                  )
                               )
               Plaintiff,      )
                               )
        v.                     )          CIVIL ACTION
                               )          NO. 20-01245-WGY
AMERICAS LEADING FINANCE, LLC, )
TRAKSECURE CORP., CENTERBRIDGE )
PARTNERS, LP, NICOLAS KOGAN, JANE )
DOE, CAROLA ACUM, JOSÉ CORREA, )
RACHEL ROE, RICARDO CRUZ, SUSAN )
DOE; JOSÉ ORTEGA, MARY ROE,    )
VICTOR GARCIA PORRATA, SUSAN ROE, )
LUIS O'FARRIL, JANE ROE and their )
conjugal partnerships, CORPORATION )
ABC, PARTNERSHIP DEF, LIMITED  )
LIABILITY COMPANY GHI,         )
                               )
               Defendants.     )
_____)
```

YOUNG, D.J.[1]                              March 24, 2021

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

This memorandum of decision addresses the issue of whether

non-literal copying of a computer program violates the Copyright

Act if the structure, sequence, and organization ("SSO") of a

vendor's computer program are copied by a customer who

participated in the development of the software, but had no

---

[1] Of the District of Massachusetts, sitting by designation.

direct access to the source code, later provides that information to a competitor who thereafter creates a similar computer program with that same SSO for the use of that customer.  Specifically, the plaintiff, e-STEPS, LLC ("e-STEPS"), brought this action primarily for copyright infringement against Americas Leading Finance, LLC ("American"), its investor, Centerbridge Partners, LP ("Centerbridge"), and Traksecure Corp. ("Traksecure"), along with certain officers and employees of American and Traksecure.  e-STEPS created a Total Control GPS program ("Total Control GPS") and incorporated it into a system to track the location of automobiles financed by American with subprime borrowers.  According to e-STEPS, American and Traksecure took e-STEPS' expression of the non-literal SSO portions of its Total Control GPS, its requirements and certificate and, at the urging of American's investor Centerbridge, created their own version, cutting e-STEPS out.  At a hearing on January 14, 2021, the Court dismissed the action as to all counts as to Centerbridge, and all counts as to the remaining defendants, but took under advisement e-STEPS' First Cause of Action for Copyright Infringement.  For the reasons stated below, the Court rules that e-STEPS has albeit barely sufficiently, pleaded a claim for copyright infringement, and therefore denies the remaining defendants' motions to dismiss as to this remaining count.

## II.   BACKGROUND

### A. Procedural History

#### 1.    Prior Actions

The parties have been litigating in the local Puerto Rico and federal courts since 2019.  Compl. ¶¶ 259-262, ECF No. 1. In federal court, e-STEPS initially filed a claim on similar but not identical facts.  e-STEPS, LLC v. Americas Leading Fin., LLC, CIVIL 19-1637CCC (D.P.R. filed July 2, 2019) ("e-STEPS I"). At the motion to dismiss stage, that court dismissed the action without prejudice because the allegations were insufficient to sustain the claims.  e-STEPS I, 2019 WL 9834429, at *6 (D.P.R. Sept. 25, 2019).  The judgment was entered without prejudice. e-STEPS I, Judgment, ECF No. 43.  American and Traksecure, among others, jointly moved to amend the judgment to dismiss to reflect that only the state law claims were dismissed without prejudice after the federal claims had apparently been dismissed on the merits.  e-STEPS I, Joint Mot. Amend J., ECF No. 44.  E-STEPS opposed the motion to amend the judgment, arguing that the Court's dismissal was proper because the pleading of additional facts could correct the pleading deficiencies.  e-STEPS I, Opp'n Defs.' Mot. Amend J., ECF No. 45.  The Court denied the motion. e-STEPS I, Order, ECF No. 49.  The current action followed.

### 2.   This Action and Pending Motions to Dismiss

At the January 14, 2021 hearing, the Court heard the following motions to dismiss:

(1)   American's motion to dismiss, ECF No. 76 ("American Mot."), e-STEPS' opposition, ECF No. 47 ("Opp. American Mot."), and reply, ECF 53-1 ("American Reply").  This motion is joined by Nicolas Kogan, Carola Acum, José Correa, Ricardo Cruz, and José Ortega (collectively, American and these defendants are "the American Defendants"). See ECF No. 34;

(2)   Traksecure and individual defendants Víctor García Porrata, Luis O'Farril, the Conjugal Partnership García-Roe, and the Conjugal Partnership O'Farril-Roe's (the "Tracksecure Defendants") motion to dismiss, ECF No. 29 ("Traksecure Mot.), and e-STEPS' opposition, ECF No. 44 ("Opp. Traksecure Mot."); and

(3)   Centerbridge's motion to dismiss, ECF No. 37 ("Centerbridge Mot."), e-STEPS' opposition, ECF No. 51 ("Opp. Centerbridge Mot."), and Centerbridge's Reply, ECF No. 55 ("Centerbridge Reply").

At the hearing, the Court ALLOWED Centerbridge's motion to dismiss in its entirety and ALLOWED in part and DENIED in part the American Defendants' and Traksecure Defendants' motions to the extent that all that remains to be decided is whether Count I, Copyright Infringement, survives.

### B. Facts Alleged in the Complaint

The following facts are taken almost verbatim from the complaint; quotations are omitted.  e-STEPS owns a valid copyright over the program known as Total Control GPS, a platform which links individuals to the vehicles American finances; locates those vehicles as needed; and tracks vehicles

[4]

as needed, using GPS technology.  Compl. ¶ 17, Ex. 2,
Certificate Registration TX 8-679-684 ("Cert. of Reg. TX 8-679-
648"), ECF 1-2.  It also owns a valid copyright over the
platform's functional specifications, and a Certificate of
Installation produced by the platform.  Compl. ¶ 18, Ex. 3,
Certificate Registration TX-706-911 ("Cert. of Reg. TX-706-
911"), ECF 1-3; id. Ex. 4, Certificate Registration TX-733-463
("Cert. of Reg. TX-733-463"), ECF 1-4.

The Total Control GPS platform is a specific automotive
tracking resource and business process management platform.
Compl. ¶ 19, Ex. 5, Aff. Professor Eric Koskien ("Koskien
Aff."), ECF 1-5.  Although there are several GPS tracking
programs on the market, Total Control GPS is more than just
"tracking software," and e-STEPS owns infrastructure to track
vehicles.  Compl. ¶¶ 20-21.

In early 2015, American needed a GPS tracking system for
the vehicles it intended to finance and decided that because it
lacked the expertise and proper means, it would outsource the
work instead of developing a software solution in-house.  Id. ¶¶
22-23.

American initially asked Traksecure for a proposal, but
Traksecure's president, codefendant Víctor García Porrata, upon
learning that American officer Juan Ramon (Moncho) Gutierrez
Rodriguez was an acquaintance of his, inflated the proposal and

[5]

its potential profit.  Id. ¶¶ 24-25.  Gutierrez noticed the
change, and the evaluating committee rejected the proposal and
sought another provider.  Id. ¶¶ 26-27.

On June 18, 2015, American entered into a contract ("the
Contract") with e-STEPS to provide a complete information
technology ("IT") solution to track the spatial location of
motor vehicles that served as liens to the loans that American
had made to its clients.  Id. ¶ 30.

When e-STEPS contracted with American, it had never tracked
a vehicle, used GPS technology to track vehicles, or created
business processes to accomplish this objective.  Id. ¶ 56.
American had no requirements and never gave any to e-STEPS for
the development of the Total Control GPS.  Id. ¶ 67.

When the contract began, e-STEPS had to create and provide
American with processes from which it then derived in a separate
creation stage, non-literal elements and functionalities for the
software that it incorporated through the contracted license
into the service platform with certain components necessary for
the tracking of vehicles.  Id. ¶ 58.

One of the most critical, foundational aspects of a
software process is the need to develop so-called specifications
or "requirements," which express how the software should behave
or work.  Id. ¶ 61.  Requirements are needed to inform engineers
of everything from the largest of matters to the smallest of

details in order for the project ideas and concepts to be
translated into computer code.  Id. ¶ 62.  When there is less
precedent for the software, great effort in terms of time and
cost must be invested to create the requirements.  Id. ¶ 64.
This is called "requirements engineering," and it can be time-
consuming and costly, necessitating identifying all aspects of
the system, including both the functional (e.g., features) and
non-functional (e.g., performance, security, etc.) aspects as to
how the system should work and what it must do.  Id. ¶¶ 63-66.

The end result of the requirements is the developer's
expression of the structure, sequence, and organization
(commonly known as "SSO") of the specific software solution.
Id. ¶ 68.  After the expression of SSO, there is only one more
element to finish the software: creating the source code and
object code.  Id. ¶¶ 69-70.

Here, the end result is the Total Control GPS platform,
among e-STEPS' most valuable assets, composed of the following
modules and outputs: (a) GPS Installation; (b) Condition Report;
(c) Reporting; (d) Ticket Management; (e) GPS Tracking; (f)
Billing; and (g) Certification.  Id. ¶¶ 71-73.

American was, at the time, the only financial institution
in Puerto Rico that used GPS technology to track vehicles that
serve as collateral to the auto loans.  Id. ¶ 31.  In turn, the
solution developed by e-STEPS, comprised of its source code,

object code, and the structure, sequence, and organization of both the program as an integrated whole and the program's individual elements, became a competitive advantage that e-STEPS painstakingly gained over its competitors, among them the disgruntled codefendant Traksecure.  Id. ¶ 32.

Under the Contract, e-STEPS would sell to American the GPS units (initially purchased in California and then imported from China) that e-STEPS would then install in the vehicles, which American then financed to the purchasers.  Id. ¶¶ 38-45.  As part of the service lease, e-STEPS granted American a limited use license of e-STEPS' Total Control GPS.  Id.

In May 2016, almost a year after e-STEPS and American signed their contract, codefendant Nicolás Kogan ("Kogan"), American's founder and CEO, told e-STEPS that codefendant Centerbridge Partners, an investor in American and a buyer of its auto loans, had requested that another company be contracted to provide the same intellectual property e-STEPS provided.  Id. ¶¶ 76-77.  e-STEPS opposed such a move by American, but Kogan assured e-STEPS that it did not have anything to worry about because American was well aware of its contractual obligations that protected e-STEPS' platform and work.  Id. ¶ 78.  American, Kogan said, just wanted to avoid "put[ting] all their eggs in one basket."  e-STEPS reasonably relied on these representations.  Id. ¶¶ 78-80.

American and Traksecure signed a contract which is virtually identical to that between e-STEPS and American, except for certain names and dates.  Id. ¶ 82.  e-STEPS alleges on information and belief that American conditioned its agreement with Traksecure such that the tracking services provided by Traksecure had to be the same as those provided by e-STEPS, with the same platform behavior and outputs, following the same requirements that e-STEPS had originally created and designed as part of the technologies offered under its contract with American.  Id. ¶ 83.  American allegedly knew or should have known, among other things, that its actions violated e-STEPS' copyrights.  Id. ¶ 84.

Traksecure's platform was insufficient, and dealers increasingly complained.  Id. ¶¶ 86-99.  Kogan again ordered that Traksecure's system be "the same" as e-STEPS' Total Control GPS© platform, or American would terminate the contract with Traksecure.  Id. ¶ 100.  Additionally, both internal and external auditors as well as investors requested that the services received by both suppliers, e-STEPS and Traksecure, would be the same, including the outputs generated by the Total Control GPS platform (the invoices, the reports, the Vehicle Condition Reports, and the Certificates of Installation, among other elements of the platform).  Id. ¶ 101.

e-STEPS alleges on information and belief that Kogan started boasting about e-STEPS' seamless and effective platform and would assure its investors that soon they would no longer need e-STEPS at all because American was developing an internal platform that together with Traksecure would enable American to terminate its contract with e-STEPS.  Id. ¶ 102.

In June 2016, Javier Robles ("Robles"), the American employee most familiar with e-STEPS' Total Control GPS, was called by his direct supervisor and director of business development, codefendant Ricardo Cruz ("Cruz"), to a meeting. Id. ¶¶ 103-114.  At that meeting, Cruz introduced Robles to Victor Garcia Porrata, Luis O'Farril, and Miguel Príncipe, introducing them as representatives from Traksecure.  Id. ¶ 115.

Cruz required Robles, over his initial objections, to provide Traksecure with all of his knowledge about how e-STEPS' platform functioned, including its SSO.  Id. ¶¶ 114-179.  Over multiple meetings, Robles provided the information.  Id.

## III. ANALYSIS

### A.   The Motion to Dismiss Standard

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter 'to state a claim to relief that is plausible on its face.'"  McMillan v. Rodríguez-Negrón, CIVIL NO. 19-1639 (CCC-MDM), 2020 WL 7422317, at *1 (D.P.R. Dec. 18, 2020) (Gelpí, C.J.) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  The Court must decide
whether the complaint alleges sufficient facts to "raise a right
to relief above the speculative level."  Id. (quoting Bell Atl.
Corp., 550 U.S. at 555).  The Court proceeds "on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)," and disregards "statements in the complaint
that merely offer legal conclusions couched as fact or
threadbare recitals of the elements of a cause of action."
Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir.
2011) (citations, quotations, and punctuation omitted).  As the
First Circuit has recently reiterated, "[t]he sole inquiry under
Rule 12(b)(6) is whether, construing the well-pleaded facts of
the complaint in the light most favorable to the plaintiff[ ],
the complaint states a claim for which relief can be granted."
Cortés-Ramos v. Martin-Morales, 956 F.3d 36, 41 (1st Cir. 2020)
(quoting Ocasio-Hernández, 640 F.3d at 7).

> **B.    The Traksecure and American Motions to Dismiss e-
>        STEPS' First Cause of Action**

The American Defendants and Traksecure Defendants move to
dismiss e-STEPS' First Cause of Action for Copyright
Infringement primarily because the claim falls outside the
boundaries of copyright protection, and therefore there was no
direct or contributory infringement.  American Mot. 4-13;
Traksecure Mot. 15-25.  "In order to establish a claim for

copyright infringement, the plaintiff bears the burden of
showing '(1) ownership of a valid copyright, and (2)
[unauthorized] copying of constituent elements of the work that
are original.'"  e-STEPS I, 2019 WL 9834429, at *1 (quoting
Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st
Cir. 1995), aff'd by an equally divided court, 516 U.S. 233
(1996) (per curiam).  "'It is well settled by now that computer
programs are afforded copyright protection as literary works.'"
Id. at *2 (quoting Lotus, 49 F.3d at 813.)  As the e-STEPS I
court notes, while "'[l]iteral' copying cases, where the source
code or object code of a program is copied word for word, are
relatively straightforward. . . . courts have struggled to apply
copyright protections to the 'nonliteral' or non-written aspects
of computer programs."  Id.  Put another way, "[t]he difficulty
lies in distinguishing between the expressive aspects of
computer programs, which can be protected, and functional
aspects, which cannot."  Id.  In the context of a copyright
claim, the First Circuit teaches that "at the pleading stage,
the plaintiff need not actually prove the elements of his claim
but rather need only sufficiently allege facts that show the
claim is plausible on its face."  Cortés-Ramos, 956 F.3d at 41.

### 1. Copyright Registration Sufficiently Pleaded

The American Defendants argue that the registration
certificates are invalid.  American Mot. 4-6.  "In Section

411(a) of Title 17, the copyright statute provides that 'no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title.'" Cortés-Ramos, 956 F.3d at 42.  The registration condition is satisfied upon registration by the Copyright Registrar.  Id. (citing Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC, 139 S. Ct. 881, 892 (2019)).  "[A] certificate of copyright registration constitutes prima facie evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid." Bassett v. Jensen, 459 F. Supp. 3d 293, 304 (D. Mass. 2020) (Saris, J.) (quoting Society of Holy Transfiguration Monastery, Inc. v. Gregory, 689 F.3d 29, 40 (1st Cir. 2012)).

Pursuant to 17 U.S.C. § 411(b):

(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—

    (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

    (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b) (emphases added).  Here, the American Defendants' arguments fail because even assuming arguendo that

[13]

there are errors in the registration, the issue of knowledge at

the motion to dismiss stage is contested.  Moreover, as Chief

Judge Gelpí recently held in denying a summary judgment motion:

> [A]lthough inaccuracies in a copyright registration
> may bar actions for infringement under the Copyright
> Act, immaterial, inadvertent errors in an application
> for copyright registration do not jeopardize the
> validity of the registration . . . .  In general, an
> error is immaterial if its discovery is not likely to
> have led the Copyright Office to refuse the
> application . . . .  Mistakes such as an incorrect
> date of creation or failure to list all co-authors
> easily qualify as immaterial because the Copyright
> Office's decision to issue a certificate would not be
> affected by them.

Sierra-Pascual v. Pina Records, Inc., 660 F. Supp. 2d 196, 201

(D.P.R. 2009) (Gelpi, C.J.) (citations omitted).  In any event,

in that case, where the "co-defendant . . . offer[ed] no other

proof in this respect, of willful or deliberate misstatements,

the court [could not] make a determination at [that] point that

[the plaintiff] perpetrated fraud against the Copyright Office"

and denied the motion for summary judgment on this point.  Id.

at 204.  American's claim of knowledge of inaccuracy is

conclusory, and it would be impermissible to draw an inference

in its favor at this stage of the proceedings.  See Roberts v.

Gordy, 877 F.3d 1024, 1029 (11th Cir. 2017) (holding

"intentional or purposeful concealment of relevant information"

is required to invalidate a copyright registration); Palmer/Kane

LLC v. Gareth Stevens Publg., 15-cv-7404-GHW, 2016 WL 6238612,

[14]

at *3 (S.D.N.Y. Oct. 24, 2016) ("A factual finding that inaccurate information was knowingly included on a copyright application is a prerequisite to invalidating a copyright").

## 2. Copyright Infringement Sufficiently Pleaded

The American Defendants and Traksecure Defendants each argue that e-STEPS is attempting to copyright that which is not copyrightable under 17 U.S.C. § 102(b), which provides: "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b); American Mot. 7.  Indeed, as American argues, American Mot. 8-9, the court in e-STEPS I, held e-STEPS was seeking to do just that:

> E-STEPS does not allege that defendants engaged in literal copying by copying object code or source code. Rather, e-STEPS alleges a nonliteral violation by which defendants American and Traksecure copied aspects of "Total Control GPS" to create a substantially similar competing software.  In other words, plaintiff claims only that defendants' program shares the same functions or behaviors as "Total Control GPS."  Therefore, plaintiff's allegation that defendants had access to and modeled their new software after "Total Control GPS" is inapposite, as the functions, processes, and systems purportedly copied are not protected by copyright law. Defendants have met their burden of demonstrating that "Total Control GPS" is not a valid copyright because the material is not copyrightable.

[15]

e-STEPS, LLC, 2019 WL 9834429 at *4.  The complaint in this action is expanded and turns, however, on whether "SSO" as described in this complaint is subject to copyright.  e-STEPS relies on Abarca Health, LLC v. PharmPix Corp., 806 F. Supp. 2d 483, 490 (D.P.R. 2011) (McGiverin, M.J.), for the proposition that SSO is protectable.  That court held:

> Copyrighted software typically contains both copyrighted and unprotected or functional elements. Sony Computer Entertainment, Inc. v. Connectix Corp., 203 F.3d 596, 599 (9th Cir. 2000).  The protectable elements of software include both "literal" and "non-literal" elements.  The literal elements are the source code and object code; protectable non-literal elements include a program's "structure, sequence, organization, user interface, screen displays, and menu structures." General Universal Sys., Inc. v. Lee, 379 F.3d 131, 142 (5th Cir. 2004).

Id.  That court went on to state:

> While certain constituent elements (such as field names in database software) are generally not protected in and of themselves, they may be protectable as "compilations" if their selection, coordination, or arrangement results on the whole in an original work of authorship.  17 U.S.C. § 101; Merchant Transaction Sys., Inc. v. Nelcela, Inc., 2009 WL 723001, at *8, *12–13 (D. Ariz. Mar. 18, 2009) (citations and quotations omitted).  Conversely, while only the expression of an idea, not the idea itself, is protectable, 17 U.S.C. § 102(b), even expression is not protected where there are effectively only very few ways or one way of expressing an idea (the so-called "merger doctrine"), or where "the expression embodied in the work necessarily flows from a commonplace idea" (the so-called "scènes-à-faire doctrine").  Nelcela, 2009 WL 723001, at *11 (citations and quotations omitted).  The doctrines of merger and scènes-à-faire are of particular relevance in the software context, where technical constraints and industry standards may limit how a work is expressed. See id.

[16]

Id. at 490 n.7.

The sine qua non of a computer program infringement case is for this Court to determine, "[w]hen faced with nonliteral-copying cases, . . . whether similarities are due merely to the fact that the two works share the same underlying idea or whether they instead indicate that the second author copied the first author's expression." Lotus Dev. Corp., 49 F.3d at 814.

In Lotus, the First Circuit discussed the Second Circuit's test for non-literal infringement of a computer program code developed in Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693 (2d Cir. 1992), the "Altai test". Lotus, at 814. The Altai test requires the Court to evaluate three steps:

> The abstraction step requires courts to "dissect the allegedly copied program's structure and isolate each level of abstraction contained within it." Altai, 982 F.2d at 707. This step enables courts to identify the appropriate framework within which to separate protectable expression from unprotected ideas. Second, courts apply a "filtration" step in which they examine "the structural components at each level of abstraction to determine whether their particular inclusion at that level was 'idea' or was dictated by considerations of efficiency, so as to be necessarily incidental to that idea; required by factors external to the program itself; or taken from the public domain." Id. Finally, courts compare the protected elements of the infringed work (i.e., those that survived the filtration screening) to the corresponding elements of the allegedly infringing work to determine whether there was sufficient copying of protected material to constitute infringement. Id. at 710.

Lotus Dev. Corp., 49 F.3d at 814.  Lotus Dev. Corp. was not,
however, a case of non-literal copying of computer code; rather,
the question decided there was whether the copying of a menu
command hierarchy was copyrightable.  Id. at 815.  The First
Circuit held that a menu hierarchy is a method of operation
under 17 U.S.C. §102(b) and is not copyrightable.  Id. at 816-
19.  Concurring, Judge Boudin wrote:

> The problem presented by computer programs is
> fundamentally different in one respect.  The computer
> program is a means for causing something to happen; it
> has a mechanical utility, an instrumental role, in
> accomplishing the world's work.  Granting protection,
> in other words, can have some of the consequences of
> patent protection in limiting other people's ability to
> perform a task in the most efficient manner.  Utility
> does not bar copyright (dictionaries may be
> copyrighted), but it alters the calculus.

> Of course, the argument for protection is undiminished,
> perhaps even enhanced, by utility: if we want more of
> an intellectual product, a temporary monopoly for the
> creator provides incentives for others to create other,
> different items in this class.  But the "cost" side of
> the equation may be different where one places a very
> high value on public access to a useful innovation that
> may be the most efficient means of performing a given
> task.  Thus, the argument for extending protection may
> be the same; but the stakes on the other side are much
> higher.

> It is no accident that patent protection has
> preconditions that copyright protection does not—
> notably, the requirements of novelty and non-
> obviousness—and that patents are granted for a shorter
> period than copyrights.  This problem of utility has
> sometimes manifested itself in copyright cases, such as
> Baker v. Selden, 101 U.S. 99 (1879), and been dealt with
> through various formulations that limit copyright or
> create limited rights to copy.  But the case law and

doctrine addressed to utility in copyright have been
brief detours in the general march of copyright law.

Requests for the protection of computer menus present
the concern with fencing off access to the commons in
an acute form.  A new menu may be a creative work, but
over time its importance may come to reside more in the
investment that has been made by users in learning the
menu and in building their own mini-programs—macros—in
reliance upon the menu.  Better typewriter keyboard
layouts may exist, but the familiar QWERTY keyboard
dominates the market because that is what everyone has
learned to use.  See P. David, Clio and the Economics
of QWERTY, 75 Am. Econ. Rev. 332 (1985).  The QWERTY
keyboard is nothing other than a menu of letters.

Thus, to assume that computer programs are just
one more new means of expression, like a filmed play,
may be quite wrong.  The "form" -- the written source
code or the menu structure depicted on the screen --
look hauntingly like the familiar stuff of copyright;
but the "substance" probably has more to do with
problems presented in patent law or, as already noted,
in those rare cases where copyright law has confronted
industrially useful expressions.  Applying copyright
law to computer programs is like assembling a jigsaw
puzzle whose pieces do not quite fit.

Id. at 819-821.

The First Circuit is thus in the minority of circuits

holding that expression that is part of a method of operation is

not copyrightable.  See Oracle Am., Inc. v. Google Inc., 750

F.3d 1339, 1366 (Fed. Cir. 2014); Commonwealth of P.R v. OPG

Tech., Inc., Civil No. 15-3125 (JAG/BJM), 2016 WL 5724807, at

*12 (D.P.R. Sept. 6, 2016) (McGiverin, M.J.)(explaining that

"the First Circuit's approach is in tension with the law of

other circuits" (quoting Oracle, 750 F.3d at 1365 ("[T]he hard

and fast rule set down in Lotus . . . --i.e., that elements

which perform a function can never be copyrightable -- is at
odds with the Ninth Circuit's endorsement of the abstraction-
filtration-comparison analysis" [established in Altai]))), R&R
adopted sub nom. Commonwealth of P.R., Treasury Dep't v. OPG
Tech. Corp. (D.P.R. Oct. 1, 2016) (Garcia-Gregory, J.).  See
also OPG Tech, 2016 WL 5724807, at *12 (recognizing that "no
other circuit has adopted the First Circuit's 'method of
operation' analysis").  Recently, Magistrate Judge McGiverin
correctly observed that, nevertheless, "Lotus remains the law of
this Circuit, and so that case shines the beacon by which this
court must steer."  Id.

     Three separate copyrights are claimed here: (1) the Total
Control GPS Platform, which is a computer program, Cert. of Reg.
TX 8-679-648; (2) Total Control GPS - Functional Specifications,
classified as text, Cert. of Reg. TX-733-463, and (3) "Total GPS
Installer Certificate," classified as text/artwork, Cert. of
Reg. TX-706-911.  As to the Total Control GPS Platform -- the
computer program -- the literal and non-literal components
including those consisting of SSO, may arguably be protectable
under copyright.  See Abarca Health, LLC, 806 F. Supp. 2d at
490.  That is, to the extent that Robles was able to provide the
SSO with respect to the Total Control GPS program, and
Traksecure replicated that SSO in its program, there is a
plausible claim for copyrightable material.  As to the

functional specifications, "[w]hile the literal words of a
functional specification may be copyrighted, the system it
describes cannot be."  See e-STEPS, LLC, 2019 WL 9834429, at *5
Finally, the GPS Installer Certificate is copyrightable.
Contrary to e-STEPS I, the complaint identifies similarities in
format, text, and graphics.  Compare Compl. ¶¶ 145-151
(describing and comparing the design of the form in addition to
functionality) with e-STEPS, LLC, 2019 WL 9834429, at *5 ("The
only characteristics of the Certificate described in the
Complaint are the above-mentioned 'information fields.'
Plaintiff provides no description of other, more expressive
elements of the Certificate, such as format, text, or graphics.
Because defendant alleges copying only as to the functional
elements of the document, the Court finds that it is
uncopyrightable under [17] U.S.C. § 102(b).").

### 3. e-STEPS Properly Alleged Copying

American argues that e-STEPS failed to allege that it
copied the Service Platform.  American Mot. 10.  First, American
correctly argues that there is no allegation that it had access
to the source or object code or expressive elements of such code
and, to be sure, e-STEPS has made no effort to separate and
identify which elements are protected.  American Mot. 10.  e-
STEPS responds that SSO can be copied without access to the

source code itself and that therefore copying has been

adequately alleged as to the SSO.  Opp. American Mot. 9-11.

Indeed, the infringement alleged in the complaint is that

Robles, an American employee, was required by American to assist

Traksecure to create its own version of Total Control GPS.

Compl. ¶¶ 106-154.  Again, there is no allegation that the

literal program code was copied.  As to the computer program, e-

STEPS alleges:

> As a result of the access provided by American to
> Traksecure of e-STEPS' protected work comprised of the
> <u>software requirements</u>, non-literal elements of the
> protected software, functionality, structure, sequence,
> organization, components, modules, algorithms, data
> structures, and other elements, Traksecure was able to
> produce a substantially similar program in a small
> fraction of the time, effort and costs that e-STEPS had
> to incur in developing its protected work.

<u>Id.</u> ¶ 165; Koskien Aff. 14, 29.  e-STEPS blends "functionality"

into its list of SSO -- dangerously close to the <u>Lotus</u> shoals.

Indeed, this complaint admittedly walks the very edge of

copyright law, if it does not, in fact, step too far; e-STEPS is

alleging that an employee of American who had no access to the

underlying computer code itself, provided "SSO" of the program

to Traksecure who replicated the SSO.  e-STEPS has <u>barely</u> met

its relatively low burden under Rule 8.  To the extent that this

SSO is covered by copyright, copying has been plausibly alleged.

<u>See</u> <u>SAS Inst. Inc.</u> v. <u>World Programming Ltd.</u>, No. 10-CV-25-FL,

2012 WL 5844910, at *8 (E.D.N.C. Oct. 18, 2012), <u>R&R adopted,</u>

No. 10-CV-25-FL, 2012 WL 5844899 (E.D.N.C. Nov. 19, 2012)

(denying motion to dismiss where infringer had access to

program); cf. El-Sedfy v. WhatsApp Inc., Case No. 16-cv-04056-

JCS, 2016 WL 6427855, at *7 (N.D. Cal. Oct. 31, 2016)

(dismissing complaint for failure to allege access to source

code).  While e-STEPS has not done so with pinpoint accuracy,

those issues can be narrowed after discovery and, perhaps,

summary judgment or case-stated.[2]  As to the allegations of

copying of the Certificate of Installation, there are sufficient

allegations of copying by Traksecure.  Compl. ¶¶ 145-151.

### 4. Remaining Arguments

American's remaining arguments on secondary infringement

and misuse of copyright doctrine are not persuasive.  As for

secondary infringement, e-STEPS has alleged that American

assisted Traksecure in its copying of the SSO at issue here.

See id.; Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545

U.S. 913, 930 (2005) (holding a person "infringes contributorily

---

[2] As the Court indicated to the parties at the motion
hearing, the Court is reluctant to parse too closely the
contours of copyright infringement allegations at this nascent
stage in the proceedings.  See Situation Mgt. Sys., Inc. v. ASP.
Consulting LLC, 560 F.3d 53, 61 (1st Cir. 2009).  Moreover, on
October 7, 2020, the Supreme Court heard argument on appeal of
Oracle Am., Inc. v. Google LLC, 886 F.3d 1179, 1204 (Fed. Cir.
2018), cert. granted 140 S. Ct. 520 (2019).  That pending
decision may provide further guidance as to copyright protection
in the context of SSO and the appropriate tests.

by intentionally inducing or encouraging direct infringement"). American's copyright misuse claim is, at best, a questionable affirmative defense inasmuch as the First Circuit "has not yet recognized misuse of a copyright as a defense to infringement." Society of Holy Transfiguration Monastery, Inc., 689 F.3d at 65.

In turn, Traksecure's alternative ground to dismiss this action on issue prelusion fails.  Traksecure Mot. 7-14.  It argues that even though the judgment was entered without prejudice, the issue of copyright protection over the three registrations was ruled upon in e-STEPS I, and e-STEPS is therefore precluded from litigating here the copyright infringement claim against it.  Traksecure relies on Palmer v. Radisson Hotel International, 45 F. Supp. 2d 162, 165 (D.P.R. 1999) (Pieras, J.) (holding that dismissal without prejudice did not impair the merits determination of statute of limitation on premature lawsuit).  Traksecure Defs.' Reply 3-4, 7-14. In Palmer, although the initial action was dismissed without prejudice, that was an offensive, as opposed to defensive, use of issue preclusion.  Id. at 167.  That is, the plaintiff was using collateral estoppel to preclude dismissal of the case. Id.

True, "the First Circuit [has] rejected the argument that collateral estoppel [does] not apply when the earlier dismissal of a claim is without prejudice."  Micheo Acevedo v. Stericycle

[24]

of P.R., Inc, CIVIL NO. 19-1652 (JAG), 2020 WL 1126168, at *6
(D.P.R. Mar. 6, 2020) (citing Negron-Fuentes v. UPS Supply Chain
Sols., 532 F.3d 1, 8 (1st Cir. 2008)).  Indeed, a dismissal
without prejudice "implies nothing about whether any defenses --
including issue preclusion based on what was adjudicated on
other claims -- might bar them if pursued in further
litigation."  Id. (quoting Negron-Fuentes, 532 F.3d at 8).  The
complicating factor here is to determine what is precluded.  The
copyright registrations are identical, but the allegations
supporting the infringement are not identical.  The parties
litigated the issue of converting the judgment below from
"without prejudice" to "with prejudice," and that court did not
change its ruling to a dismissal with prejudice.  See e-STEPS I,
Order, ECF No. 49.  It appears that the court in e-STEPS I based
its legal ruling of copyrightability on the motion to dismiss
essentially on the sufficiency of the pleading.  See 2019 WL
9834429, at *5.  In the end, the parties have not directed this
Court to any case directly on point; that is, where a copyright
infringement action was dismissed without prejudice on pleading
insufficiency and subsequently precluded on issue preclusion on
a different aspect of infringement.  Without more, this Court is
unpersuaded by the Traksecure Defendants' arguments that issue
preclusion provides an avenue for dismissal of this action as to
the copyright infringement claim.  The Traksecure Defendants

may, of course, address this issue at summary judgment.  That
is, while certain facts might (or might not) have been decided
in the earlier case, those issues may be litigated further.[3]

## IV.   CONCLUSION

For the aforementioned reasons, the American and Traksecure
Defendants' motions to dismiss as to Count I (ECF Nos. 76 and
29) are hereby <u>DENIED</u>.

**SO ORDERED.**

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[3] e-STEPS cites to caselaw outside the First Circuit holding
that a dismissal without prejudice bars the application of issue
preclusion.  Opp. Traksecure Mot. 6 (citing <u>Ponder</u> v. <u>Chase Home
Fin., LLC</u>, 865 F. Supp. 2d 13, 17 (D.D.C. 2012)).